UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV1082 CDP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Donald Houston's application for

supplemental security income under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381, *et seq*. Claimant Houston brings this action asserting physical

disability because of a partial left thumb amputation, diabetes, high blood

pressure, and high cholesterol. The Administrative Law Judge concluded that

Houston was not disabled. Because I find that the decision denying benefits was

supported by substantial evidence, I will affirm the decision.

## Procedural History

On February 11, 2009, Donald Houston filed for Supplemental Security

Income payments, alleging disability beginning January 2, 2009. The Social

Security Administration denied his claims on March 30, 2009, and he filed a

written request for a hearing on April 28, 2009. Houston then appeared and testified at a hearing on February 9, 2010. The Administrative Law Judge issued an opinion on June 3, 2010, upholding the denial of benefits. Houston filed a request for review with the Social Security Administration Appeals Council on August 6, 2010, which was denied on May 9, 2011. The ALJ's opinion thus stands as the final determination of the Commissioner. Houston filed this appeal on June 15, 2011.

## Testimony Before the ALJ

At the time of the administrative hearing, Houston was fifty-one years old, and he had completed the twelfth grade. He is married and has three children, ages seventeen, twenty, and twenty-one, and the whole family resides together. During the day, he watches television, stays in the house, and sometimes visits his mother across the street. He doesn't do laundry, and his wife does most of the cooking. When he does cook, he only makes oatmeal, toast, or salad, and he has to do it with only one hand. He also needs help getting dressed, including buttoning buttons and tying his shoes. He can drive by himself, but he testified that he doesn't do so often because it causes him fatigue to only drive with one hand. He also said that when things break in his house, he now has to call someone to fix them, rather than fixing them himself like he used to do.

The last time that Houston worked was in 2008, when he worked as a self-employed handyman for about four or five years. He also worked in his brother's ice cream parlor sporadically for about ten years. The records show that he has not filed income tax returns since 2000, although he testified that he did file in 2006 and 2007. He has always done construction work or labor, and he received his CDL license just before his thumb accident.

Houston is right-handed, but he testified that he used to use his left hand frequently. On January 2, 2009, he injured his left thumb while working on his car and eventually had to have part of it amputated because of an infection and osteomyelitis. He said that he cannot pick up anything with his left hand, and only about ten or fifteen pounds with his right hand because of a bad back. When he uses his left hand more frequently, it becomes very sore and causes him to need more pain medication. His pain occurs every day, and it varies in type between sharp pain, aching, and burning. Sometimes he has to hold his thumb in a certain way to relieve the pain. It also causes pain to radiate up through his arm if he moves it too much. He also has trouble sleeping because he can only lay in certain positions to protect his thumb.

As far as how his thumb affects his ability to work, Houston stated that he can't grip anymore, so he drops and breaks items often. He also testified that he is

not supposed to work when he is taking his nerve medication. His nerves prevent him from sitting for long periods of time.

He also has diabetes, which was diagnosed at the time of his thumb accident. He testified that it makes his weight drop sometimes and his medication, Gabapentin, causes him to drag his leg and to be very tired. He can't walk very far without getting tired, sometimes only a few steps, but he said he could stand for about an hour. Some of his other medication, such as Lipitor for high cholesterol, has made him drowsy in the morning.

The ALJ also called a vocational expert (VE), Stephen Dolan, who had been provided with and reviewed Houston's file, including his past work history. The ALJ asked about Houston's employment potential assuming the following hypothetical, for a person with the same age, education, and past work experience: he is limited to medium exertional-level work; he can never climb ropes, ladders, or scaffolds; fingering and handling with the left, non-dominant arm is frequent, not constant; and he should avoid concentrated exposure to excessive vibrations. The VE testified that such an individual could not perform any of Houston's past work, but could perform work as a cashier, fast food counter worker, or housekeeper or cleaner. The ALJ then asked the same hypothetical, but using the light-level lifting limitations instead of medium. The VE testified that it would include all of the previous jobs except the medium-level cleaners, but it would also add jobs as a

sales attendant or outside deliverer. The ALJ then asked about Houston's employment potential considering the first hypothetical, but requiring that he be able to take occasional unscheduled breaks because of distraction from pain and the need to lay down. The VE said that such an individual would be unable to maintain employment.

Houston's attorney then asked the VE about the first hypothetical, with the added limitation that he would only perform fingering or handling with the left hand on a rare basis. The VE stated that the cashier and fast food counter jobs would still be available, as someone with only one hand can perform those jobs. The attorney then asked a hypothetical where the individual was limited to medium work, fingering and handling items rarely, and unable to work constantly at a competitive pace. The VE stated that such a person could not maintain employment.

## Medical Records

According to medical records presented to the ALJ, Houston's left thumb was injured on January 2, 2009, when he was seen at St. Louis Connect Care urgent care center. An X-ray showed an oblique fracture of the distal phalanx of his left thumb. They performed a nail bed removal and laceration repair, and he was prescribed Augmentin and Percocet. On January 5, 2009, he returned because of extreme pain pursuant to the thumb injury and was prescribed Ibuprofen and

Vicodin.  The wound was also re-dressed, as it had not been changed in three days. He then followed up at Grace Hill Neighborhood Health Center on January 7, 2009, and he received refills on his pain medication and the wound was re-dressed.  He again followed up at St. Mary's Health Center on January 11, 2009 for continued pain in his thumb.

On January 14, 2009, he was admitted to St. Louis University Hospital.  His left thumb range of motion was limited, and he experienced swelling and deformity of his distal phalanx.  He was given a sling and he was receiving antibiotics intravenously.  He also received a more thorough debridement and placement of a needle for stabilization of the fracture.  Pursuant to consultation with the infectious disease service on January 16, 2009, Houston received a PICC line for a continuing antibiotic regimen.  On January 20, 2009, he underwent another debridement, percutaneous pinning of the distal phalanx, and application of a wound vacuum device.  He received a pain management consultation on the same day.  On January 22, 2009, he underwent further debridement, drainage, and wash out of his left thumb, but there was limited improvement of the wound.  He therefore underwent amputation of the left distal phalanx with flap reconstruction of the thumb on January 24, 2009.  He tolerated the procedure well and experienced lessened pain, so he was discharged on January 29, 2009, to receive antibiotics for two more weeks.

On February 19, 2009, Houston received a follow up Vicodin prescription after a telephone visit with Grace Hill Neighborhood Health Center. He then followed up on February 25, 2009 because of phantom pain and stress from the accident, and he was prescribed Gabapentin and Vicodin. The wound was healing well at that point. By March 4, 2009, he was counseled on the need to start using his thumb and leaving it open to the air, as it was still healing appropriately. Throughout the course of these visits, he was diagnosed with diabetes, and he was told to stop drinking juices, drink water, and eat fresh vegetables.

On March 3, 2010, he was seen at the Plastic Surgery Clinic at St. Louis University by Dr. Bernstein. Houston still complained of pain, and Dr. Bernstein suspected some neuroma from his dorsal nerve supply to his thumb. He suggested using a local anesthetic injection to determine if that was the cause, but Houston refused to allow this local injection for diagnosis. He was referred to a hand therapist for strengthening and exercises, but there is no evidence in the record hat he received such therapy.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to

support the ALJ's conclusion.  *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir.

2000).  As long as there is substantial evidence on the record as a whole to support

the Commissioner's decision, a court may not reverse it because substantial

evidence exists in the record that would have supported a contrary outcome, *id*., or

because the court would have decided the case differently.  *Browning v. Sullivan*,

958 F.2d 817, 822 (8th Cir. 1992).  In determining whether existing evidence is

substantial, a court considers "evidence that detracts from the Commissioner's

decision as well as evidence that supports it."  *Singh v. Apfel*, 222 F.3d 448, 451

(8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole to consider:

(1)     the credibility findings made by the Administrative Law Judge;

(2)     the claimant's education, background, work history, and age;

(3)     the medical evidence from treating and consulting physicians;

(4)     the claimant's subjective complaints relating to exertional and
        non-exertional impairments;

(5)     any corroboration by third parties of the plaintiff's
        impairments; and

(6)     the testimony of vocational experts when required which is
        based upon a proper hypothetical question.

*Brand v. Sec'y of the Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th

Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the

Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1.    the claimant's daily activities;

2.    the duration, frequency, and intensity of the pain;

3.    precipitating and aggravating factors;

4.    dosage, effectiveness and side effects of medication;

5.    functional restrictions.

*Id.* at 1322.

## The ALJ's Findings

The ALJ found that Houston was not disabled within the meaning of the

Social Security Act from January 2, 2009 through the date of the decision.  He

issued the following specific findings:

1.    The claimant has not engaged in substantial gainful activity since February 11, 2009, the application date (20 C.F.R. § 416.971 *et seq*.).

2.    The claimant has the following severe impairments: diabetes mellitus and status post left thumb amputation.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925, and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(c) except no climbing of ropes, ladders, or scaffolding; he is limited to frequent (not constant) fingering and handling with the left non-dominant hand; and he should avoid concentrated exposure to excessive vibration.

5.    The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

6.    The claimant was born on May 3, 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 C.F.R. § 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since February 11, 2009, the date the application was filed (20 C.F.R. § 416.920(g)).

The ALJ doubted the credibility of Houston's testimony regarding the intensity, persistence, and limiting effects of his symptoms to the extent that the testimony was inconsistent with the residual functional capacity determination and the medical evidence. The ALJ found that Houston was not precluded from performing light work, with certain additional limitations, because of his impairments. Because he found that Houston's subjective complaints and alleged limitations were not fully persuasive, he concluded that Houston was not disabled.

## Discussion

When reviewing a denial of Social Security benefits, a court cannot reverse an ALJ's decision simply because the court may have reached a different outcome, or because substantial evidence might support a different outcome. *Jones ex rel. Morris v. Barnhard*, 315 F.3d 974, 977 (8th Cir. 2003); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Instead, the court's task is a narrow one: to determine

whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g); *Estes v. Barnhard*, 275 F.3d 722, 724 (8th Cir. 2002). On appeal, Houston raises two issues. First, he claims that the ALJ's residual functional capacity determination was incorrect because it was not supported by medical evidence. Second, he claims that the hypothetical question posed to the VE by the ALJ failed to fully consider the consequences of plaintiff's impairment, so the VE's decision does not constitute substantial evidence supporting the ALJ's decision. Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

### ALJ's Determination of Claimant's Residual Functional Capacity

Houston first argues that the ALJ erred in disregarding the opinion of Dr. Bernstein, one of Houston's treating physicians, thus incorrectly determining Houston's residual functional capacity. A claimant's residual functional capacity is what he or she can still do despite physical or mental limitations. 20 C.F.R. pt. 404.1545(a); *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Although the ALJ is not limited to considering only medical evidence in making this assessment, the ALJ is "required to consider at least some supporting

evidence from a professional," because a claimant's residual functional capacity is a medical question. *Lauer*, 245 F.3d at 704.

Here, the ALJ determined that Houston has the residual functional capacity to: perform light work without climbing of ropes, ladders, or scaffolding; and finger and handle objects with his left, non-dominant hand on a frequent, but not constant, basis. However, he must avoid concentrated exposure to excessive vibration.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks and citation omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if such an opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). However, the opinion of the treating physician should be given great weight only if it is based on sufficient medical data. *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as a whole); *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (upholding the ALJ's decision to discount the treating physician's medical-source statement

where limitations were inconsistent with other substantial evidence in the record); *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data) (internal quotation marks and citation omitted). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch*, 201 F.3d at 1013 (internal citations and quotation marks omitted); *see also Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

Additionally, Social Security Ruling 96-2p states in its "Explanation of Terms" that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, at *2 (S.S.A. July 2, 1996). SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927

require the ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." *Id.* at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999) (quoting *Cruze v. Chater*, 85 F.3d 1320, 1324-25 (8th Cir. 1996)). An ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints, rather than on objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citing *Vandenboom v. Barnhard*, 421 F.3d 745, 749 (8th Cir. 2005)); *see also Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not have been given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form).

Dr. Bernstein opined that Houston suffered significant limitations in grasping, holding objects, and manipulating fine objects, and that his work pace is limited by his impairment. In evaluating Dr. Bernstein's opinion, the ALJ held:

> Following the hearing, the record was left open at the request of the claimant to obtain some purported outstanding medical records. However, the only additional reports that were submitted reflect that after the hearing the claimant went to see Dr. Michael Bernstein for the first time since early 2009 with numerous subjective complaints which he had not bothered to bring to any physician's attention for over a year. On March 3, 2010, Dr. Bernstein completed a medical source statement and assessed the claimant with a left thumb

amputation with moderate to severe pain. Dr. Bernstein opined that the claimant's work pace is limited by upper extremity impairment and significant limitations in grasping, holding objects/tools and manipulating fine objects. It is apparent that Dr. Bernstein relied merely on the subjective report of symptoms and limitations provided by the claimant, and uncritically accepted as true most, if not all, of what the claimant reported. The doctor acted as nothing more than a scrivener for the claimant and, therefore, the opinion of Dr. Bernstein is not given controlling weight.

Here, the ALJ recognized Dr. Bernstein's opinion, but then properly assigned it no weight as it was inconsistent with the objective evidence of record and not supported by clinical and laboratory findings. Importantly, his opinion appeared to be completely unsupported by every other medical record submitted to the ALJ. The ALJ summarized these records as follows:

I note the claimant did undergo surgery for the alleged thumb impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. The claimant did have some subjective complaints post-surgery, however, the wound has been noted to be healing well and the claimant has been advised to use his thumb and to leave it open to the air. Additionally, despite allegations of pain and discomfort the claimant refused to allow his treating physician to administer even a local injection for diagnostic purposes. Further, the claimant neither sought nor received any medical treatment after February 2009 until after the hearing in this case. This suggests that the claimant's alleged symptoms are not as debilitating as he purports.

Although the claimant has received treatment for diabetes mellitus, the treatment has been essentially routine and/or conservative in nature, and there is no evidence of end organ damage and the claimant has not required hospital care. Also, no restrictions have been placed on the claimant by a treating physician because of this

impairment; in fact, the claimant has only been advised to discontinue drinking juices, to drink only water and to eat vegetables.

. . . .

. . . The record is devoid of any evidence showing a significant degree of muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality or gait disturbance, which is an indication that claimant continues to move about on a fairly regular basis.

Although the claimant has alleged various side effects from the use of medications, the medical records, such as office treatment notes, do not corroborate those allegations. Additionally, the claimant has not complained of a need to lie down frequently or the need to take frequent breaks to his treating physicians; and no physician has advised him to lie down frequently, take frequent breaks or to retire from gainful activity.

The ALJ properly discounted the credibility of Dr. Bernstein's opinions because they were unsupported by any data, and there were major discrepancies between his evaluation and the other medical evidence in the record. It was therefore proper for the ALJ to rely on other, more credible evidence in the record regarding Houston's impairments.

Houston next argues that the ALJ's decision should be reversed because by disregarding Dr. Bernstein's medical-source statement, his residual functional capacity determination fails to rely on medical evidence. The Eighth Circuit has noted the ALJ "must determine a claimant's [residual functional capacity] based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his

- 18 -

limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing

*Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

In making his residual functional capacity determination, the ALJ

considered Houston's medically determinable physical and mental impairments

and the extent to which the symptoms were consistent with the objective medical

evidence, the medical evidence of record, and Houston's testimony about his daily

activities and subjective complaints. The ALJ discussed and properly discounted

Dr. Bernstein's opinions as discussed above. The ALJ also discussed Houston's

subjective complaints of pain and fatigue and found them to be unsupported by the

objective medical evidence. The ALJ determined that Houston's allegations were

not fully credible because they are inconsistent with the medical evidence and with

Houston's other testimony in the hearing. For example, Houston did not see any

medical professional between February 2009 and the time of the hearing, and he

never before complained of side effects from his medication. The ALJ also found

Houston's testimony to be "generally inconsistent and unpersuasive" for the

following reasons:

> I note the claimant's responses while testifying were evasive or vague
> at times, and left the impression that the claimant may have been less
> than entirely candid. Actually, he would not even tell me how much
> weight he believed he could lift and/or carry. The claimant has
> described daily activities which are fairly limited; however, two
> factors weigh against considering these allegations to be strong
> evidence in favor of finding the claimant disabled. First, allegedly
> limited daily activities cannot be objectively verified with any

reasonable degree of certainty. Second, even if the claimant's daily
activities are truly as limited as alleged, it is difficult to attribute that
degree of limitation to the claimant's medical condition, as opposed
to other reasons, in view of the relatively weak medical evidence and
other factors discussed in this decision.

The ALJ's credibility determinations are well-supported by the inconsistencies in
the record. *See Shannon v. Carter*, 54 F.3d 484, 486 (8th Cir. 1995) (ALJ
properly discounted claimant's subjective complaints of pain where "encounters
with doctors appear to be linked primarily to his quest to obtain benefits, rather
than to obtain medical treatment."). "The credibility of a claimant's subjective
testimony is primarily for the ALJ to decide, not the courts." *Wagner v. Astrue*,
499 F.3d 842, 851 (8th Cir. 2007) (internal quotation marks and citation omitted).
Here, the ALJ's residual functional capacity finding is consistent with the credible
medical evidence. His decisions to discount Houston's subjective allegations and
Dr. Bernstein's statement do not undermine the validity of his residual functional
capacity determination, which depended on the medical records as a whole.

### ALJ's Hypothetical Questions for the VE

Houston next argues that the ALJ's decision was not based on substantial
evidence. He bases this argument on the hypotheticals posed to the VE by the
ALJ. He claims that these hypotheticals did not fully capture the concrete
consequences of his impairment. "While it is clear that 'questions posed to
vocational experts . . . should precisely set out the claimant's particular physical

and mental impairments,' a proper hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.'" *House v. Shalala*, 34 F.3d 691, 694 (8th Cir. 1994) (internal citations omitted). Therefore, the hypotheticals need only include those impairments that the ALJ finds credible. *See id*.

As discussed above, the ALJ posed hypotheticals to the VE involving frequent (but not constant) fingering and handling, as well as avoiding exposure to excessive vibration, at both the medium and light exertional levels. These questions involved limitations different than those contained in Dr. Bernstein's statement, but as discussed above, the ALJ permissibly refused to give controlling weight to that opinion. The ALJ adequately explained his reasoning for discounting Dr. Bernstein's opinion, so he was not required to include those limitations in his questions to the VE.

Furthermore, even if the ALJ should have given greater credit to the impairments asserted by Houston, any such error was harmless. Houston's attorney modified the ALJ's hypotheticals by referring to jobs that involve only rare, not frequent, fingering and handling of objects. The VE testified that jobs would still be available with that limitation, and further testified that Houston could perform certain jobs even if he was entirely unable to use his left hand. Because Houston's attorney elicited testimony about all of Houston's

impairments, including those referred to by Dr. Bernstein, any inadequacy in the ALJ's hypothetical was harmless. *See England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007) (noting that even if the hypothetical should have been more detailed as to the claimant's limitations, "[claimant's] attorney posed to the VE a hypothetical that reflected these limitations, in response to which the VE testified that there would still be jobs that [claimant] could undertake. Any inadequacy in the hypothetical was thus harmless."). Thus, the VE's testimony that work exists in significant numbers for individuals with Houston's residual functional capacity constitutes substantial evidence on which the ALJ's decision was based.

For the reasons discussed above, I find that the decision denying benefits was supported by substantial evidence, and I will affirm the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of February, 2012.